OPINION
Ronald R. Fuller, D.V.M., appeals a judgment of the Court of Common Pleas of Licking County, Ohio, which sustained in part the decision of the appellee Ohio Veterinary Medical Licensing Board. The Board found Dr. Fuller had violated Ohio Revised and Administrative Codes in his treatment of various animals. Appellant assigns three errors to the trial court:
ASSIGNMENTS OF ERROR
 I. THE TRIAL COURT ERRED IN CONCLUDING THAT APPELLEE'S FINDINGS WERE SUPPORTED BY RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE.
 II. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS WERE NOT VIOLATED BY THE PARTICIPATION OF THE BOARD PRESIDENT IN THE DELIBERATIONS AND DETERMINATION OF THE BOARD.
 III. THE TRIAL COURT ERRED IN FINDING O.R.C. 4741.22 TO BE CONSTITUTIONAL.
The record indicates appellant is a veterinarian licensed by the State of Ohio. The Board held an administrative hearing regarding sixteen allegations against appellant, and found nine violations. The Licking County Court of Common Pleas reversed five of the nine findings and remanded the case back to the Board. The trial court found appellant had committed four violations of Ohio law with regard to his veterinary practice.
 I
First, appellant argues the trial court incorrectly found the Board's findings were supported by reliable probative and substantive evidence. R.C. 119.12 deals with this type of administrative appeal to the common pleas court. Pursuant to the statute, the trial court may affirm the order of the agency if it finds upon the entire record of evidence submitted to the agency, and any additional evidence the trial court may have admitted, that the order is supported by reliable, probative and substantial evidence and is in accord with law. In Our Place, Inc. v. OhioLiquor Control Commission (1992), 63 Ohio St.3d 570, the Ohio Supreme Court found reliable evidence is dependable and has a reasonable probability of being true. Probative evidence is relevant evidence tending to prove the issue while substantial evidence is evidence which has importance and value to the case. The common pleas court, in its well-reasoned twelve page judgment entry, noted its standard of review in an administrative appeal is essentially a hybrid review, requiring the court to review the agency's order in light of the evidence, giving due deference to the administrative board's resolution of the evidentiary conflicts. Nevertheless, the court must also conduct a carefully limited consideration of the weight of the evidence, seeUniversity of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108.
 I
Appellant challenges the testimony of the Board's expert, Dr. Sherding. Dr. Sherding testified he agreed to testify on behalf of the Board because the Board President had previously done favors for his employer. Appellant apparently advances the argument this testimony was an admission of bias, and the triers of fact should have rejected Dr. Sherding's testimony for this reason. In addition, appellant argues Dr. Sherding's testimony was based on an erroneous standard of care. Sherding testified he believed the standard of care for a veterinarian to be "optimal recommendation of optimal care", while appellant cites Ohio Administrative Code Section 4741-1-03 as dictating the standard of care for a veterinarian to be "the minimal standard care of similar practitioners under the same similar conditions, regardless of whether an actual injury to the patient is established."
The trial court cited In Re: Williams (1991), 60 Ohio St.3d 85
as authority for the proposition that the Board is not required to entertain expert testimony on the standard of care in every case because the Board itself is comprised of experts who possess the requisite knowledge to determine the standard and any violation. If the issue is one in which medical experts are divided, and there is no statute or rule governing the situation, then the Board may not simply follow its own opinion.
Here, the issue was whether appellant violated Ohio law in injecting, on five occasions, a drug called Naquasone into a cat brought to him for treatment. Naquasone is an anti-inflammatory diuretic used in some countries for the treatment of cattle, but is not approved for use in the United States. The trial court found the appellant received Naquason in 1975 or 1976 as part of a study to be conducted on horses. Appellant concedes he injected a cat. The drug appellant used was 18 years old, not approved for use in the United States, and not generally used on cats. The trial court found appellee's decision the appellant's use of the drug on the cat fell below the acceptable standard of care was well taken.
Ohio Administrative Code Section 4741-1-03 requires veterinarians to keep adequate medical records. The testimony presented to the Board indicated in several instances appellant used a shorthand method of recording medications, and no one reviewing appellant's records would be able to tell precisely what medications or doses were given without recourse to other materials. Appellant testified the dosages he administered were based on the weight of pets, which is clearly recorded in the file. In addition, appellant testified that some of the medications either were only produced in a single dose, or were only stocked by him in a single dose, and thus the records he kept were accurate.
The trial court found there was reliable probative and substantial evidence appellant failed to maintain adequate records, and we agree appellant's shorthand notes are inadequate.
Lastly, appellee found appellant had failed to communicate honestly with pet owners. The Board found this established a violation for gross incompetence. There was testimony presented appellant did not promptly inform pet owners of the death of their pets, and some cases, affirmatively represented to pet owners their pets were still alive and being treated when in fact the pets had died. The other instance of intentional lying to pet owners involved the issue that appellant told various patient's owners to bring the animals back to him after a dental procedure, to have gel foam packing removed from the pet's mouths. The record indicates appellant never used gel foam packing on the animals, although it was undisputed appellant also did not bill for any gel foam packing. Apparently, appellant lied to the owners of the patients in order to insure they brought their animals for a follow-up visit. The record does not indicate appellant charged for the follow-up examination, either, but the Board found the mere fact appellant lied to his patient's owners in order to induce them to cooperate with the treatment plan violated Ohio law.
Appellant argues the witnesses who testified appellant had lied to his patients were not reliable.
The trial court found even if appellant was motivated by good intentions, misrepresenting treatment provided to a pet is a violation of the Ohio Revised and Administrative Codes.
We have reviewed the record, and we find the trial court was correct in concluding that the appellee's findings on these allegations were supported by reliable, probative and substantial evidence. Accordingly, the first assignment of error is overruled.
 II
Next, appellant argues his constitutional right to due process was violated by the Board President in the decision making of the Board. Appellant argues because the President of the Board personally procured the appellee's expert, the President should not have been permitted to participate in the decision making relevant to appellant's case. The trial court rejected this allegation, finding the expert's opinion was not necessary for the Board to reach its conclusion, see I, supra, and also, there was no evidence the President of the Board acted inappropriately.
We find appellant cannot demonstrate any prejudice in this record regarding Dr. Sherding's testimony or the manner in which it was procured.
The second assignment of error is overruled.
 III
In his third assignment of error, appellant argues R.C. 4741.22 is unconstitutional. Appellant argues that R.C. 4741.22
creates a financial incentive for the Board and the Hearing Officer to find a violation, because one of the penalties which may be imposed can be an assessment of the costs of the hearing.
In Ward v. Village of Monroeville (1972), 409 U.S. 57, the United States Supreme Court found it was a denial of due process for a tribunal to have financial interest in the outcome of its proceedings. In Ward, the Supreme Court found a mayor presiding in mayor's court may be tempted to assess fines and costs because a mayor also has an executive responsibility for the village finances.
Appellant argues the hearing officer has a direct financial interest in finding appellant violated the statute because his fees could then be assessable against appellant. For this reason, appellant urges R.C. 4741.22 is unconstitutional.
The trial court pointed out the statute provides the Hearing Officer would be paid regardless of his disposition of the complaint. The Board does not reap the benefits of finding violations and imposing fines because all fines received are paid into the State's general revenue fund. The trial court conceded the Board is funded by the State in proportion to the amount of money the Board spends, but it does not follow that the Board will for this reason find unwarranted violations. We agree.
We find the statute provides no financial incentive, either direct or indirect, which violates the right of due process as defined by the Ohio and United States Supreme Court.
The third assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.
By Gwin, P.J., Hoffman, J., and Reader, J., concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed. Costs to appellant.